IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNCORA GUARANTEE INC., formerly known as XL CAPITAL ASSURANCE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EMC MORTGAGE CORP.,<br><br>Defendant. | No. MC 13-80037 SI<br><br>**ORDER COMPELLING PRODUCTION OF DOCUMENTS** |

As part of discovery in an action in the Southern District of New York, plaintiff Syncora Guarantee Inc. moves this Court to compel production of documents held by third party GreenPoint Mortgage Funding, Inc. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing scheduled for June 14, 2013. After considering the parties' arguments, the Court GRANTS plaintiff's motion, for the reasons set forth below.

**BACKGROUND**

The underlying action in this case, *Syncora Guarantee Inc. v. EMC Mortgage Corp.*, No. 09-CV-3106 (S.D.N.Y. filed March 31, 2009), involves an alleged breach of contract for the securitization of mortgages. EMC sponsored, and Syncora insured, the transaction at issue, whereby approximately 10,000 mortgage loans were sold to a trust. The loans were originated by GreenPoint. Syncora alleges that EMC breached express representations and warrantees attesting to specific attributes and the quality of the GreenPoint loans, including that GreenPoint did not commit fraud, error, omission,

1 misrepresentation, or negligence in the origination of the loans, and the origination methodology
2 confirmed that the borrower had the ability and willingness to pay.

3 In many of the loans GreenPoint has originated, the sales contracts included provisions requiring
4 GreenPoint to repurchase the loans, such as when GreenPoint breached its warranties. When it received
5 these repurchase demands, the GreenPoint Representations and Warranties ("R&W") department would
6 investigate and analyze these demands. In 2009, Syncora issued a subpoena to GreenPoint that sought
7 the production of, *inter alia*, documents related to GreenPoint's analysis of the repurchase demands.
8 GreenPoint has produced some of these documents, but contends that others are properly redacted or
9 withheld on the basis of attorney-client privilege. Syncora does not challenge the privilege designation
10 for documents created by or sent directly to GreenPoint counsel. However, it disputes the privilege
11 designation of approximately 1,800 other documents that were created by non-attorneys and not sent
12 directly to attorneys, arguing that they are not privileged because they concern regular business
13 operations. GreenPoint argues that these documents are privileged because they were created at the
14 direction of and in response to requests by in-house counsel, and were eventually used by attorneys to
15 generate legal advice.

## LEGAL STANDARD

18 Pursuant to Rule 26, a party is entitled to any discovery "regarding any nonprivileged matter
19 that is relevant to any party's claim or defense," including any discovery that "appears reasonably
20 calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The Federal
21 Rules of Civil Procedure create a 'broad right of discovery' because 'wide access to relevant facts serves
22 the integrity and fairness of the judicial process by promoting the search for the truth.'" *Epstein v.*
23 *MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th
24 Cir.1993)).

25 In an action brought to federal court under diversity jurisdiction, the attorney-client privilege is
26 governed by the state law otherwise applicable to the case. Fed. R. Evid. 501. To determine which state
27 law is applicable, "the federal court applies the choice-of-law rules of the forum state." *Paracor Fin.,*
28 *Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Under California choice of law rules, the

2

court must apply a "government interest" analysis. *Hurtado v. Superior Court*, 11 Cal.3d 574, 579-80 (1974). This is "an analysis of the respective interests of the states involved." *Id.* First, the court must determine whether the law in the two states differs; if it does differ, then the court must determine if both states have an interest in the application of the law (*i.e.*, whether there is a "true conflict" between the states); if there is no true conflict, then the court applies the law of the only interested state; if there is a true conflict, then the court must determine which state has the greater interest, and must apply that state's laws. *Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1195-96 (9th Cir.1982).

**DISCUSSION**

**I.  California's Privilege Law**

Under California law, the attorney-client privilege "authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client." Cal. Evid. Code § 954. "Confidential communication" is defined as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence . . . to further the interest of the client . . . or the accomplishment of the purpose for which the lawyer is consulted . . ." Cal. Evid. Code § 952. The party claiming attorney-client privilege "shoulders the burden of showing the evidence it seeks to suppress falls within the terms of an applicable statute." *HLC Properties Ltd. v. Superior Court*, 35 Cal.4th 54, 59-60 (2005).

In a corporate setting, the attorney-client privilege may extend to communications involving middle- and lower-level employees. *See Upjohn Co. v. United States*, 449 U.S. 383, 391 (1981). However, "otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Zurich Am. Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1504 (2007). Additionally, "the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Id.* (quotations and citations omitted).

GreenPoint argues that these communications were not made in the ordinary course of business, but instead were made at the direction of legal counsel for the purposes of providing legal advice to

3

1 management. It explains that, prior to August 2007, its R&W department would review repurchase
2 demands and negotiate a resolution based on business concerns, such as maintaining relationships.
3 Decl. of Rose Medina ("Medina Decl.") ¶¶ 5-8. But in August 2007, it ceased originating residential
4 mortgage loans, and therefore made the decision to only repurchase loans that it was contractually
5 obligated to. *Id.* ¶¶ 10-11. Thus, GreenPoint argues, in August 2007 the analysis of the repurchase
6 demands changed from a business decision to a legal analysis. The R&W department undertook all of
7 the investigations concerning the repurchase demands with the oversight and at the direction of the legal
8 department, which then incorporated the analysis into its legal advice. *Id.* ¶¶ 14-17.

9 GreenPoint has failed to demonstrate that the analysis undertaken by the R&W department was
10 not part of the general business of the company. Both before and after August 2007, it was the general
11 business of the R&W department to analyze repurchase demands. Merely because they changed their
12 business strategy regarding these repurchase demands, an entire department's analysis cannot be
13 covered under the blanket protection of attorney client privilege.

14 Privilege requires that the "dominant purpose" of the communication be in furtherance of the
15 attorney-client relationship; if the communications could have been transacted by a non-attorney, then
16 the attorney-client privilege does not apply. *Montebello Rose Co. v. Agric. Labor Relations Bd.*, 119
17 Cal. App. 3d 1, 32 (1981) (citing *Holm v. Superior Court*, 42 Cal. 2d 500, 507 (1954)). Here, the
18 dominant purpose of these communications is the analysis of repurchase demands. Not only *could* this
19 analysis have been conducted by non-attorneys, but it *was* conducted by an entire department of non-
20 attorneys, who were performing their regular business functions.

21 The fact that these documents were eventually sent to GreenPoint counsel is not enough to create
22 an attorney-client privilege. "Knowledge which is not otherwise privileged does not become so merely
23 by being communicated to an attorney." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725,
24 735 (2009) (quotation omitted).

25 Accordingly, under California law, these communications would not be covered under the
26 attorney-client privilege.

27
28

4

## II. New York's Privilege Law

"Under New York law, the attorney-client privilege protects confidential communications between client and counsel where such communications are made for the purpose of providing or obtaining legal advice." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (citing N.Y.C.P.L.R. § 4503(a)(1)). The party claiming the attorney-client privilege bears the burden of establishing its applicability. *Id.* "Such a party satisfies its burden of proof where it 'establish[es] that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client.'" *Id.* (quoting *Charter One Bank, F.S.B. v. Midtown Rochester, LLC*, 191 Misc. 2d 154, 166 (N.Y. Sup. Ct. 2002)). While this privilege protects confidential communications "relating to their legal matters," there is no such protection for communications that relate primarily to business matters. *Rossi v. Blue Cross & Blue Shield of Greater New York*, 73 N.Y.2d 588, 592–93 (1989).

New York courts have recently decided several cases similar to the instant matter, and rejected broad claims of attorney-client privilege for communications regarding the analysis of repurchase demands. In *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 93 A.D.3d 574, 575 (N.Y. App. Div. 2012), the court affirmed the holding that documents regarding the bank's review of repurchase demands were discoverable, holding that:

> processing repurchase requests was an inherent and long-standing part of defendants' business [citation]. That a new division was created to respond to plaintiff's repurchase requests, or that litigation appeared imminent, is of no moment; defendants were, and always had been, contractually obligated to conduct repurchase reviews and such reviews were, and always had been, conducted by defendants' own staff of underwriters and auditors [citation].

In *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 1579, 2013 WL 1195545, at *6 (S.D.N.Y. Mar. 25, 2013), the plaintiff sought documents concerning the defendant's analysis of repurchase demands. The court rejected the contention that these documents were protected by the attorney client privilege. First, it found that a majority of the communications were between non-attorneys, and therefore not protected. *Id.* at *9. Second, it found that even those communications that included attorneys were not privileged because they related to "ordinary business matters" and were

5

"predominantly business advice." *Id.* (citing *AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052, 2008 WL 4067437, at *6 (S.D.N.Y. Aug. 28, 2008); *ABB Kent–Taylor v. Stallings & Co.*, 172 F.R.D. 53, 58 (W.D.N.Y. 2006)).

GreenPoint's attempts to distinguish these cases are unpersuasive. First, it argues that the documents that it created were at the direction of legal counsel. However, as the *MBIA* court held, it does not matter if the analysis was performed at the direction of legal counsel in anticipation of litigation; the key fact was that "defendants were, and always had been, contractually obligated to conduct repurchase reviews and such reviews were, and always had been, conducted by defendants' own staff of underwriters and auditors." 93 A.D.3d at 575. Similarly, GreenPoint's legal obligations regarding the repurchase demands remained the same before and after August 2007. Moreover, throughout that entire period, the analysis was conducted by the R&W department, not the legal department.

Second, GreenPoint argues that its responses to the repurchase demands after August 2007 were not "ordinary business" because it had ceased its business of originating residential mortgage loans. However, the relevant "ordinary business," as *MBIA* explains, is the ordinary business of analyzing repurchase demands. The *Assured* court also focused on whether the analysis of the repurchase demands was part of the ordinary business of the company; it was not relevant to its analysis whether the rest of the company's business operations were proceeding normally. Therefore, under New York law, the communications regarding repurchase demands are not protected by the attorney-client privilege.

Accordingly, because the privilege law in the two states does not differ, the Court finds that these documents are discoverable.

///

6

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff's motion to compel the production of documents. This resolves Docket No. 48.

**IT IS SO ORDERED.**

Dated: June 10, 2013

SUSAN ILLSTON
United States District Judge